# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                      No. CR 17-0663 JB

RICHARD G. THYBERG,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Opposed Motion for Sentence Reduction Under Guideline Amendment 821, filed April 3, 2024 (Doc. 28)("Motion"). The Court held a hearing on October 18, 2024. See Clerk's Minutes at 1, filed October 18, 2024 (Doc. 38). The primary issue is whether the Court should reduce Defendant Richard G. Thyberg's sentence pursuant to 18 U.S.C. § 3582(c)(2), where there was a rule 11(c)(1)(C) plea agreement involving the sentences in two cases. The Court concludes that, while Thyberg is eligible for a sentence reduction, Thyberg's rule 11(c)(1)(C) plea agreement substantially benefits him; accordingly, the Court declines to unravel the plea agreement by awarding Thyberg a sentence reduction.

## PROCEDURAL HISTORY

On March 8, 2017, Thyberg pleads guilty to: (i) violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), possession with intent to distribute fifty grams and more of a mixture and substance containing a detectable amount of methamphetamine, along with 18 U.S.C. § 2, aiding and abetting; (ii) violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), possession with intent to distribute a mixture and substance containing a detectable amount of heroin, along with 18 U.S.C. § 2, aiding and abetting; and (iii) violating the terms of supervised release in an older federal case, CR 09-0538 RB, in the United States District Court for the District of New Mexico. See Plea Agreement

¶ 3, at 2, filed March 8, 2017 (Doc. 17).  The Plea Agreement is pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  See Plea Agreement at 1.

The United States Probation Office's Presentence Investigation Report, filed June 8, 2017 Doc. 19)("PSR"), calculates Thyberg's offense level as 25 and assigns him a criminal history subtotal of 11.  PSR ¶ 27, at 6; id. ¶ 44, at 14.  The PSR adds an additional 2 points to Thyberg's criminal history subtotal pursuant to U.S.S.G § 4A1.1(d), because Thyberg committed his crime while under a criminal justice sentence.  See PSR ¶ 43, at 14.  Accordingly, Thyberg's criminal history score is 13, which corresponds to a criminal history category of VI.  See PSR ¶ 44, at 13. Thyberg's Guideline imprisonment range is 110 months to 137 months.  See PSR ¶ 81, at 22.  The PSR notes that if Thyberg is convicted at trial, his offense level, "absent any adjustments," would have been 28, which, combined with his criminal history category of VI, gives him a Guidelines range of 140 months to 175 months.  See PSR ¶ 82, at 22.  Thyberg, therefore, "reduced his exposure to incarceration" by entering into the plea agreement.  PSR ¶ 82, at 22.  Finally, Thyberg's Guidelines range for his violation of supervised release in the older federal case, CR09-538, is 30 months to 37 months.  See Transcript of Sentencing Hearing at 7:18-20 (taken July 18, 2017), filed February 5, 2025 (Doc. 39)("Parker Tr.")(Parker).

At the July 18, 2017, revocation hearing in CR 09-0538 and the sentencing hearing in this case, CR 17-0663, the Honorable James A. Parker, Senior United States District Judge for the United States District Court for the District of New Mexico, first accepts the plea agreement in this case, CR 17-0663, and sentences Thyberg to 120 months of imprisonment.  See Parker Tr. at 3:7-10 (Parker); id. at 4:18-21 (Parker).  Second, Senior Judge Parker sentences Thyberg in CR 09-0538, which is Thyberg's older federal case, in which he violates his conditions of supervised release; Senior Judge Parker sentences Thyberg to 24 months' imprisonment, as the United States

Probation Office ("USPO") recommends. <u>See</u> Parker Tr. at 8:5-19 (Parker). Senior Judge Parker runs the twenty-four-month sentence concurrently to the 120-month sentence in this case, CR 17-0663. <u>See</u> Parker Tr. at 8:20-25. Thyberg's estimated release date is June 28, 2025. <u>See</u> USPO Retroactive Guideline Amendment Memorandum at 2, filed December 22, 2023 (Doc. 25)("Memorandum").

In Thyberg's Motion, he argues that he is eligible for a sentence reduction pursuant to Amendment 821's changes to U.S.S.G. § 4A1.1, which would decrease by one the number of status points he receives for committing his crime under a criminal justice sentence. Motion at 1. Thyberg contends that Amendment 821's retroactive application changes his criminal history category from VI to V, and results in a new Guidelines range of 100 months to 125 months. <u>See</u> Motion at 2. He notes, moreover, that, if "the reduction is less than the amount of time the defendant has already served, the sentence should be reduced to a time-served sentence." Motion at 2 (citing U.S.S.G. § 1B1.10 cmt n.3). Finally, Thyberg concludes by asking the Court to reduce Thyberg's sentence to 100 months. <u>See</u> Motion at 2.

The United States opposes Thyberg's Motion. <u>See</u> United States' Response to Defendant's 18 U.S.C. § 3582(c)(2) Motion for Sentence Reduction Pursuant to Guideline Amendment 821 at 1, filed May 3, 2024 (Doc. 29)("Response"). First, the United States agrees that Thyberg is eligible for a reduction. Response at 7. The United States contends, however, that the Court should exercise its discretion and deny Thyberg a reduction. <u>See</u> Response at 7. According to the United States, the 18 U.S.C. § 3553(a) factors counsel against a sentence reduction. <u>See</u> Motion at 7. Additionally, the United States maintains that Thyberg's "post-conviction conduct also weighs against a sentence reduction." Motion at 10.

At the hearing on Thyberg's Motion, Thyberg informed the Court that he is currently residing at a halfway house in Albuquerque, New Mexico. See Draft Transcript of Hearing at 2:11-14 (taken October 18, 2024)(Saing)("Tr.").[1]  Thyberg notes that, at the time of the hearing, he had served ninety-nine months and twenty-one days of his sentence. Tr. at 3:2-6 (Saing).  The Court inquires why it should reduce Thyberg's sentence to 100 months when his plea agreement is "above the bottom of the Guideline range."  Tr. at 3:20-25 (Court).  Thyberg responds; he contends that he has not received "a substantial benefit" in the form of the plea agreement.  Tr. at 5:4-5 (Saing).  Thyberg then describes his disciplinary infractions while incarcerated and urges the Court not to rely on them in arriving at its decision, as "BOP facilities are pretty dangerous places." Tr. at 6:1-8 (Saing).  He contends that reducing his sentence to 100 months is "consistent with the policy statement, because it doesn't reduce his" sentence "to a term that is less than the minimum of the amended Guideline range," which is 100 months.  Tr. at 6:7-12 (Saing).  Thyberg also notes that 100 months "is not more than time that he's already done."  Tr. at 14-17 (Saing).  Thyberg concludes by describing his success and employment while at the halfway house, along with his desire to change his ways and support his family.  See Tr. at 9:1-10 (Saing); id. at 10:1-21.

The United States, in response, informs the Court that, in Las Cruces, "often defendants are concerned that a judge may vary upward considering the criminal history that the defendant had"; this concern, the United States posits, may explain the parties' agreement to the specific sentence in the plea agreement.  Tr. at 12:1-7 (Aragon Martinez).  The United States points out that, while it agrees that Thyberg is eligible for a reduction, "the 120-month sentence that was

_____

[1]The Court's citations to the October 18, 2024, transcript of the hearing refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

initially imposed is still within the new Guideline range" after Amendment 821 applies.  Tr. at 13:1-8 (Aragon Martinez).  Turning to the § 3553(a) factors, the United States contends that the offense's nature and circumstances do not favor a reduction, because Thyberg fled from police to avoid capture.  See Tr. at 13:15-23 (Aragon Martinez).  Second, the United States describes Thyberg's extensive criminal history and contends that this history evinces Thyberg's disrespect for the law.  See Tr. at 15:1-25 (Aragon Martinez).  Third, the United States discusses the adequate deterrence and public safety factors, and argues that "any reduction to his sentence may incentivize him to commit more crime."  Tr. at 16:16-21 (Aragon Martinez).  Finally, the United States maintains that Thyberg's history of disciplinary infractions while in custody, including an attempted assault of another inmate, weighs against a sentence reduction.  See Tr. at 17:15-25 (Aragon Martinez).

In reply, Thyberg contextualizes his criminal history by explaining that he is the "product of an extremely unstable household growing up."  Tr. at 19:1-5 (Saing).  He emphasizes, moreover, his rehabilitation in prison.  See Tr. at 20:15-20 (Saing).  Next, Thyberg allocutes and informs the Court that, while he has enjoyed breaking the law in the past, he is a changed man and wants to challenge himself to become a normal citizen.  See Tr. at 23:1-25 (Thyberg).  After Thyberg's statements to the Court, the Court indicates its reluctance to grant the motion and potentially disrupt Thyberg's housing at the halfway house.  See Tr. at 31:23-32:5 (Court).  The Court also notes that the "fact that this was a global resolution of both a revocation and a new criminal charge -- so he's had two federal cases -- I think counsels against resentencing."  Tr. 31:4-8 (Court).

## LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat.

1976, thus making Guidelines sentencing ranges advisory.  See United States v. Booker, 543 U.S. at 261.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.  Accordingly, even though the Guidelines are not mandatory, courts must consult them for advice in arriving at an appropriate sentence.  See Peugh v. United States, 569 U.S. 530, 541-42 (2013).  The Guidelines provide a starting point for the court's determination of a proper sentence.  See Gall v. United States, 552 U.S. 38, 50 n.6 (2007)("[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."); Peugh v. United States, 569 U.S. at 541 ("The post-Booker federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review.").

Congress has directed sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)** to afford adequate deterrence to criminal conduct;
>
> **(C)** to protect the public from further crimes of the defendant; and
>
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so

as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to further consider: (i) "the nature and circumstances of the offense," as well as the defendant's "history and characteristics"; (ii) the available sentences; (iii) the Guidelines; (iv) any pertinent Sentencing Commission policy statements in effect on the date of sentencing; (v) the policy favoring uniformity in sentences for defendants who commit similar crimes; and (vi) the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1), (3)-(7).

The United States Court of Appeals for the Tenth Circuit holds that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration. See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . ." United States v. Cage, 451 F.3d at 593.  A court's careful consideration of the Guidelines is proper in light of the fact that "[t]he Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." Rita v. United States, 551 U.S. 338, 349 (2007).

"[A] sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Kimbrough v. United States, 552 U.S. 85, 90-91

(2007); <u>Gall v. United States</u>, 552 U.S. at 46-47; <u>Rita v. United States</u>, 551 U.S. at 351. Instead,

the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor

of the advisory[2] Guidelines sentence. <u>See</u> <u>Kimbrough v. United States</u>, 552 U.S. at 90-91; <u>Gall v.</u>

---

[2]Attorneys and courts often say that the Guidelines are advisory, but it is more accurate to say that the resulting Guidelines ranges are advisory. <u>See</u> <u>Gall v. United States</u>, 552 U.S. 38, 46 (2007)("As a result of our decision [in <u>United States v. Booker</u>], the Guidelines are now advisory . . . ."); <u>United States v. Sells</u>, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."); <u>United States v. Leroy</u>, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are advisory, not mandatory."). The Court must consider the Guidelines, <u>see</u> <u>Gall v. United States</u>, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, <u>see</u> <u>Gall v. United States</u>, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated to apply, however, a sentence within the calculated Guidelines range. <u>See</u> <u>United States v. Sierra-Castillo</u>, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-<u>Booker</u> have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). <u>Accord</u> <u>United States v. Chavez-Rodarte</u>, No. CR 08-2499, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in <u>United States v. Booker</u> that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in <u>Kimbrough v. United States</u>, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In

United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.

       While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479, 2008 WL 2229550, at *6 (D.N.M. February 13, 2008)(Browning, J.). The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89. A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

## LAW REGARDING 18 U.S.C. § 3582(c)(2) SENTENCE REDUCTIONS

       "Generally, a district court may not modify a term of imprisonment once it has been imposed." United States v. Williams, 575 F.3d 1075, 1076 (10th Cir. 2009). "A district court is

---

       practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so." United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). 18 U.S.C. § 3582(c)(2) establishes a narrow exception to this general rule of finality "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(2). When the Commission revises the Guidelines in a way that reduces the Guidelines range for "a particular offense or category of offenses," the Commission must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u). "In this way the Act requires the Commission to decide whether amendments to the Guidelines should have retroactive effect." Hughes v. United States, 584 U.S. 675, 681 (2018)("Hughes"). If an amendment applies retroactively, § 3582(c)(2) provides that "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The Tenth Circuit has explained that a defendant must satisfy three prongs[3] to qualify for a sentence modification under Section 3582(c)(2). See United States v. C.D., 848 F.3d 1286, 1289

---

[3]Despite the clear pronouncement in United States v. C.D., 848 F.3d 1286 (10th Cir. 2017)("C.D."), that "Section 3582(c)(2) plainly tells us a defendant must overcome three distinct hurdles before he may obtain a sentence reduction," 848 F.3d at 1289 (emphasis in original), the Tenth Circuit has applied both a three-prong and two-prong analysis in unpublished § 3582(c)(2) decisions following C.D., compare United States v. Toombs, 712 F. App'x 791, 794 (10th Cir. 2017)("We have recently explained that a defendant must 'overcome three distinct hurdles before he may obtain a sentence reduction [under § 3582(c)(2)].'" (quoting C.D., 848 F.3d at 1289)(alterations in United States v. Toombs)), with United States v. Cota-Medina, No. 21-2063, 2022 WL 971894, at *2 (10th Cir. March 31, 2022)("In determining whether to grant a sentence reduction under § 3582(c)(2), the court engages in 'a two-step process.'"). District courts in the Tenth Circuit, likewise, continue to apply both a three-step and two-step analysis. Compare United

(10th Cir. 2017)("C.D."). First, "the defendant must show he was sentenced based on a guideline

range the Sentencing Commission lowered subsequent to defendant's sentencing." C.D., 848 F.3d

at 1289. The first prong is jurisdictional: if the defendant fails to make this initial showing, "the

district court lacks jurisdiction over the defendant's motion and the motion must be dismissed."

C.D., 848 F.3d at 1289.[4]  See United States v. Munoz, 682 F. App'x 635, 636 (10th Cir.

_____

States v. Collazo, No. 09-CR-2621, 2020 WL 601943, at *2 (D.N.M. February 6, 2020)(Parker, J.)("The Tenth Circuit has explained that there are three prongs a defendant must meet to qualify for a sentence modification under 3582(c)(2)."), with United States v. Fabian-Hurtado, No. CR 21-0644, 2024 WL 706934, at *2 (D.N.M. February 21, 2024)(Johnson, C.J.)("When considering a retroactive Guidelines amendment, the Court engages in a two-step process.").
    A two-pronged inquiry is appealing to a degree, because, under the three-prong analysis, "the second and third prongs overlap" to the extent that U.S.S.G. § 1B1.10 cmt. n.1(B), which courts must consider at the second step of the three-prong analysis, calls upon courts to evaluate the § 3553(a) factors that must be examined at the third prong. United States v. Collazo, 2020 WL 601943, at *3. As the Tenth Circuit formulates the two-step inquiry, however, the inquiry runs the risk of omitting evaluation of U.S.S.G. § 1B1.10 altogether, see United States v. Battle, 706 F.3d 1313, 1317 (10th Cir. 2013), and § 3582(c)(2) is clear that courts may reduce a defendant's sentence only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. 3582(c)(2). The Court will apply, therefore, the three-prong analysis, because: (i) the Tenth Circuit's most recent published pronouncement on the matter plainly calls upon the courts to use a three-part test, see C.D., 848 F.3d at 1289; (ii) a three-step inquiry mirrors the similar and settled three-step inquiry courts undertake when evaluating a motion for compassionate release pursuant to § 3582(c)(2)'s sister statute, 18 U.S.C. § 3582(c)(1); and (iii) there is value in ensuring that the U.S.S.G. § 1B1.10 policy statement, and the important limitations to sentence reductions included therein, is given independent consideration.

    [4]Recently, the Tenth Circuit has called into question whether the § 3582(c)(2) analysis's first prong is jurisdictional. See United States v. Warren, 22 F.4th 917, 926 n.6 (10th Cir. 2022)(acknowledging that, because 18 U.S.C. § 3582(c)(2) does not contain "an unequivocal statement from Congress" regarding its jurisdictional effect, "our precedent on this issue may need to be revisited," but declining to "seek en banc reconsideration of this question here"). As the Court has recognized, the Tenth Circuit recently has concluded that aspects of 18 U.S.C. § 3582(c)(1) are not jurisdictional. See United States v. Haworth, No. CR 95-0491, 2023 WL 8112827, at *6 (D.N.M. November 22, 2023)(Browning, J.)(citing United States v. Hemmelgarn, 15 F.4th 1027, 1030-31 (10th Cir. 2021)(concluding that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional); United States v. Hald, 8 F.4th 932, 942 n.7 (10th Cir. 2021)(declining "to read a jurisdictional element in § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication . . . to that effect" (quoting 18 U.S.C. § 3582(c)(1)(A))). Nonetheless, because the Tenth Circuit has not revisited its holding that the Section 3582(c)(2) analysis's first step is jurisdictional, the Court must, as a district

2017)(remanding to the district court, because it "appear[s] that the district court denied the motion on the merits. It should have, instead, dismissed the matter for lack of jurisdiction").  Second, a defendant must show that "his request for a sentence reduction is consistent with the Commission's policy statements."  C.D., 848 F.3d at 1289.  U.S.S.G. § 1B1.10 is the policy statement concerning a sentence reduction resulting from an amended Guidelines.  See C.D., 848 F.3d at 1289.  The second requirement, unlike the first, is "not a jurisdictional prerequisite to § 3582(c)(2) relief."  C.D., 848 F.3d at 1289.  "Third, the defendant must convince the district court he is entitled to relief in light of the applicable sentencing factors found in 18 U.S.C. § 3553(a)."  C.D., 848 F.3d at 1289-90.

Congress and the Sentencing Commission have placed three primary restrictions on the relief available under § 3582(c)(2).  First, courts cannot reduce the term of imprisonment below time served.  See U.S.S.G. § 1B1.10 cmt. n.3.  Second, courts may not reduce a defendant's sentence below the amended Guidelines range, unless the defendant originally received a below-Guidelines sentence because the United States made a motion to reflect the defendant's substantial assistance to authorities.  See U.S.S.G. § 1B1.10 (b)(2)(A)-(B).  In the substantial assistance case, a sentence "comparably less than the amended guideline range" may be appropriate.  U.S.S.G. § 1B1.10 (b)(2)(B).  See Dillon v. United States, 560 U.S. at 826-27 ("Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range.").[5]

_____

court, treat the first step as jurisdictional.  See United States v. Hald, 8 F.4th at 942 n.7 ("We acknowledge that this circuit has [held] that § 3582(c)(2)'s requirement that the defendant 'show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing' is a jurisdictional requirement that must be addressed first by the district court." (quoting C.D., 848 F.3d at 1289-90)).

[5]This language from Dillon v. United States, 560 U.S. at 826-27, is more general than the text of U.S.S.G. § 1B1.10(b)(2)(B).  Section 1B1.10(b)(2)(B) only permits courts to reduce the

Third, a district court may not grant a sentence reduction if the defendant's original sentence was "based on" a statutory mandatory minimum sentence rather than a Guidelines range. 18 U.S.C. § 3582(c)(2). Mandatory minimums foreclose 18 U.S.C. § 3582(c)(2) sentence reductions even for defendants who escape the mandatory minimum by providing substantial assistance to law enforcement, because their sentences are "'based on' on their mandatory minimums and their substantial assistance to the Government, not on the sentencing ranges that the Commission later lowered." Koons v. United States, 584 U.S. 700, 702 (2018). Consequently, for these defendants, a reduced sentence under 18 U.S.C. § 3582(c)(2) is not available. See Koons v. United States, 584 U.S. at 702.

The Guidelines give specific guidance to courts contemplating sentence reductions.[6] First, courts "shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). In making this decision, courts "shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1). See Freeman v. United States, 564 U.S. 522, 531 (2011)(Kennedy, J., plurality opinion)("The binding policy statement governing

---

defendant's term of imprisonment to a term that is less than the minimum of the amended guideline range if the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range pursuant to a government motion to reflect the defendant's substantial assistance to the authorities. U.S.S.G. § 1B1.10(b)(2)(B).

[6]Sentence reduction hearings under this statute are not full resentencing proceedings. See U.S.S.G. § 1B1.10(a)(3) ("[P]roceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full re-sentencing of the defendant."); Dillon v. United States, 560 U.S. at 83 ("[Section] 3582(c)(2) does not authorize a resentencing. Instead, it permits a sentence reduction within the narrow bounds established by the Commission.").

§ 3582(c)(2) motions places considerable limits on district-court discretion.  All Guidelines decisions from the original sentencing remain in place, save the sentencing range that was altered by retroactive amendment.").  In other words, "district courts cannot recalculate aspects of a sentence that are unaffected by a retroactively applicable amendment to the Guidelines."  United States v. Washington, 759 F.3d 1175, 1182 (10th Cir. 2014).  The Supreme Court has interpreted "all other guideline application decisions" broadly, holding that courts generally cannot revisit sentencing courts' calculations.  U.S.S.G. § 1B1.10(b)(1).  In United States v. Dillon, the defendant argued that the sentencing court's decision to treat the Guidelines as mandatory violated his Constitutional rights under United States v. Booker, 543 U.S. 220 (2005).  See United States v. Dillon, 560 U.S. at 831.  The Supreme Court rejected the defendant's attempt to "recalculate" his sentence and correct the error, explaining that this aspect of his sentence was "outside the scope of the proceeding authorized by § 3582(c)(2)."  United States v. Dillon, 560 U.S. at 831.

1. **Amendment 821.**

The Sentencing Commission has a responsibility to periodically "review and revise" its Guidelines.  28 U.S.C. § 994(o).  It may choose to reduce the term of imprisonment "recommended in the guidelines applicable to a particular offense or category of offenses," but it must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."  28 U.S.C. § 994(u).  Congress has directed the Sentencing Commission to formulate its Guidelines "to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission."  28 U.S.C. § 994(g).

Before the Sentencing Commission promulgated Amendment 821, U.S.S.G. § 4A1.1(d) added 2 points to defendants' criminal history scores if they "committed the instant offense while

under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  United States Sentencing Commission, <u>Guidelines Manual</u>, § 4A1.1(d) (Nov. 2021).  A defendant's criminal history score determines in which of six criminal history categories the defendant will fall.  <u>See</u> U.S.S.G. Ch. 5, Pt. A.  Generally, "more status points result in a higher criminal history category and a longer range of imprisonment under the guidelines."  <u>United States v. Bailey</u>, No. CR 19-142, 2024 WL 453619, at *2 (E.D. Pa. February 6, 2024)(Kenney, J.).

Amendment 821, which came into effect in November of 2023, <u>see</u> Supp. to App. C at 244, reduces the number of criminal history points a defendant receives for committing the charged offense under a criminal justice sentence.  <u>See</u> Supp. to App. C. at 234; United States Sentencing Commission, <u>Guidelines Manual</u>, § 4A1.1(e) (Nov. 2023).   The Amendment, which has retroactive effect and thus may be applied to closed cases, <u>see</u> U.S.S.G. § 1B1.10(a)(1), (d), revises how status points are calculated such that defendants with 7 or more criminal history points now receive 1, instead of 2 status points if they committed their offense while under a criminal justice sentence.  <u>See</u> U.S.S.G. § 4A1.1(e); Supp. to App. C at 235.  Amendment 821 also amends § 4A1.1 such that 1 status point is added only for those defendants committing an offense while under a criminal justice sentence who have over 7 status points.  <u>See</u> § 4A1.1(e); <u>United States v. Bailey</u>, 2024 WL 453619, at *2 ("[D]efendants with six or fewer criminal history points now receive zero status points.").  Additionally, Amendment 821 moves the language directing courts to apply the status-point increase from § 4A1.1(d) to § 4A1.1(e).  <u>See</u> Supp. to App. C at 235.  The result of Amendment 821's status-point reduction is that "approximately 11,500 [federal defendants] are eligible to seek a reduction in their current sentence."  Materials Relating to the 2023 Criminal

History    Amendment,    U.S.    Sent'g    Comm'n    (last    visited    May    8,    2024),

https://www.ussc.gov/policymaking/materials-relating-2023-criminal-history-amendment.

As justification for Amendment 821, the Sentencing Commission explains that, while "an

offender's criminal history calculation under the guidelines is strongly associated with the

likelihood of future recidivism by the defendant, . . . status points add little to the overall predictive

value associated with the criminal history score."  Supp. to App. C at 241 (citing U.S. Sentencing

Commission,    Revisiting    Status    Points    (2022),    https://www.ussc.gov/research/research-

reports/revisiting-status-points).    According to the Sentencing Commission, "recent research

suggests that 'status points' improve the predictive value of the criminal history score less than the

original Commission may have expected," and, "[a]ccordingly, the Commission determined that

it was appropriate to address several concerns regarding the scope and impact of status points."

Supp. to App. C at 241.  First, the Sentencing Commission observes that a defendant impacted by

§ 4A1.1(e) likely will already face a separate "consecutive punishment imposed upon revocations

of supervised release."  Supp. to App. C at 241.  Second, the Sentencing Commission observes

that "it is also possible that an offender's criminal history score would be independently increased

as the result of additional time imposed as the result of a revocation of probation or supervised

release for the offense that also results in the addition of status points."  Supp. to App. C at 241.[7]

---

[7]While the Court is unable to do the research to question the Sentencing Commission's
decision that status points add little to predict future criminal activity, the Court thinks that there
are other reasons that status points may be valuable.  Congress evidently thinks that it is important
for the federal court to supervise defendants coming out of prison; but supervision of recently
incarcerated individuals does not necessarily have to fall under the purview of the judiciary.
Federal judicial supervision of defendants is a relatively novel practice, which only began in 1984
with the passage of the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1987 (1984).  By
contrast, in New Mexico, State probation officers are in the corrections department, and not in the
State judiciary.  See Probation and Parole, New Mexico Corrections Department,
www.cd.nm.gov/divisions/probation-and-parole.  The Court does not think the federal courts
should be supervising their defendants, as supervising defendants is not a core judicial function.

Nevertheless, Congress wants the federal courts to perform this supervision, and the Court is obligated faithfully to carry out this task -- even if it is not its favorite judicial obligation.

Supervised release is a major part of the Court's job. In a border State with twenty-three Indian reservations and because the Court has been on the bench for twenty-one years, the Court has sentenced approximately 2800 defendants; the number of people on supervised release grows with years of service. The District of New Mexico ranks fifth among the ninety-four districts in the number of filed criminal cases. See U.S. District Courts - Criminal Defendants Filed, by Offense and District, Table D-3, United States Courts (2024), https://www.uscourts.gov/statistics/table/d-3/statistical-tables-federal-judiciary/2024/06/30. By way of example, the Court held seventy-three revocation hearings in 2023. Hence, the burden of supervised release on the Court is great and unwelcome.

The Court's view notwithstanding, once Congress has given the Court the task of supervising defendants coming out of prison, it must do the best to perform this responsibility faithfully. While status points may not predict future criminal activity, they send a signal that the federal court takes supervised release seriously. By amending the Guidelines to add Amendment 821, the Sentencing Commission has just weakened that signal in two ways. First, the Sentencing Commission has told defendants that it is lowering the points they will receive when they violate supervised release. Second, the Sentencing Commission tells everyone in prison that the lowering is retroactive, broadcasting to everyone in prison that the Sentencing Commission is lowering the points of supervised release.

The Court went to Seattle two years ago to the United States Sentencing Commission Conference and urged the Sentencing Commission not to make Amendment 821 retroactive. Even if the Sentencing Commission going forward does not want to assign status points, there is no sound reason to make this change retroactive. The Court works very hard to sentence its approximately 130 defendants each year, and then the Sentencing Commission tells the Court it must reevaluate these sentences. Nothing in justice and fairness requires this additional work; there is nothing "wrong" with the first sentence. A Sentencing Commission's ideological desire to decrease the prison population does not alleviate the burden that the process places on the courts and the signal that it sends to defendants that the system does not take supervised release as seriously as it used to do.

Finally, in the Court's view, some of the Sentencing Commission's observations do not reflect reality. For example, the Sentencing Commission observes that defendants implicated by § 4A1.1(a) likely will already face a separate "consecutive punishment imposed upon revocations of supervised release." Supp. to App. C at 241. While the Court cannot say what every judge does, the Court rarely, if ever, makes the sentence for revocation fully consecutive. The Court works hard to come up with a reasonable sentence for the new crime. To start slapping another few months and running it all consecutively sometimes undoes all the work on the new sentence. Typically, the Court gives the defendant a Guideline sentence for the revocation violation, but runs the entire sentence concurrently, except 1 month, which it runs consecutively. This practice does not undo all of the hard work on the new sentence but gives the defendant a month for violating supervised release. This month sends a signal to the defendant that the Court takes supervision seriously. The Court orally describes to the defendant that this one month is specifically for violating supervised release; the defendant should remember that he or she is serving that last month because he or she violated supervised release. The Court talks to defendants about the

## ANALYSIS

The Court denies the Motion. In applying the three-step analysis that <u>C.D.</u>, 848 F.3d at 1289, mandates, the Court first concludes that, because the Plea Agreement's proposed sentence has some grounding in Guideline ranges, in accepting the rule 11(c)(1)(C) plea agreement, Senior Judge Parker sentenced Thyberg based on a sentencing range that the Commission subsequently lowered. <u>See</u> <u>Hughes</u>, 584 U.S. at 681. Second, the Court concludes that a reduction in Thyberg' sentence is inconsistent with the U.S.S.G. § 1B1.10 policy statement. Third, the Court concludes that Thyberg is not entitled to relief in light of the § 3553(a) sentencing factors.

## I.    PURSUANT TO <u>HUGHES</u>, THYBERG'S SENTENCE IS BASED ON THE GUIDELINES.

Pursuant to <u>Hughes</u>, Thyberg's sentence is based on the Guidelines. At the risk of adding more prongs to an already multi-pronged analysis, the Court notes that it must answer two questions in addressing the <u>C.D.</u>'s first prong: (i) whether the defendant's sentence is based on a

---

importance of supervised release and that, if he or she violates the supervised-release conditions, all of the Court's, as well as the parties', hard work to create a fair sentence will go out the window.

The current United States Attorney and his Assistants' positions in this case, and many others before the Court, are proof that the Sentencing Commission's policy changes are wrongheaded. The current United States Attorney and his Assistants believe that the Court should not reduce Thyberg's sentence. <u>See</u> Response at 1. The Court is sympathetic to the line attorneys' concern with lowering the guideline range for these sentences, and the Court encourages the line attorneys to direct their arguments to Main DOJ.

As much as the Court disagrees with what the Sentencing Commission is doing with Amendment 821, particularly in its decision to make Amendment 821 retroactive, the Court also believes that elections have consequences. President Trump, who passed the First Step Act, largely to attract African American votes, <u>see</u> Greg Miller, <u>Allegations of Racism Have Marked Trump's Presidency and Become Key Issue as Election Nears</u>, Wash. Post (July 2, 2020)("[F]ormer officials said that Trump only agreed to support the measure when told it might boost his low poll numbers with Black voters."), did not fill the vacancies on the Sentencing Commission to implement his Act. President Biden filled these spots. The Court will not let its own thoughts about policy block its duty to implement the Sentencing Commission's decision on policy. The Court will attempt to apply the new rules as faithfully as it possibly can.

Guideline range; and (ii) whether the Sentencing Commission subsequently lowered that Guideline range.  "In the typical sentencing case, there will be no question that the defendant's Guidelines range was a basis for his sentence," because "[t]he Sentencing Reform Act requires a district court to calculate and consider a defendant's Guidelines range in every case."  Hughes, 584 U.S. at 686 (citing 18 U.S.C. § 3553(a)).  In Thyberg' case, he entered into a rule 11(c)(1)(C) plea agreement, which binds the district court to the agreed-upon sentence if the court chooses to accept the agreement.  See Fed. R. Crim. Pro. 11(c)(1)(C).  The interaction between a Type-C agreement and a § 3582(c)(2) motion was unsettled until 2018, when the Supreme Court decided Hughes.  In Hughes, the Supreme Court recognizes that its 4-1-4 decision in Freeman v. United States, 564 U.S. 522 (2011)("Freeman"), generates a split amongst the Courts of Appeals regarding which opinion controls: the four-Justice plurality or Justice Sotomayor's lone concurrence in the judgment.  See Hughes, 584 U.S. at 678.  In the Freeman plurality's view, Type-C sentences are usually "'based on the Guidelines,'" because the sentencing range is usually a "'relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement.'" Hughes, 584 U.S. at 691 (Sotomayor, J., concurring)(quoting Freeman, 564 U.S. at 530 (Kennedy, J.)(plurality opinion)).  See Freeman, 564 U.S. at 530 (Kennedy, J.)(plurality opinion)("The Guidelines require the district judge to give due consideration to the relevant sentencing range, even if the defendant and the prosecutor recommend a specific sentence as a condition of the guilty plea.").  In Justice Sotomayor's view, however, Type-C sentences are based on the plea agreement and not the Guidelines; nonetheless, Justice Sotomayor asserts that Type-C sentences are eligible for reductions under § 3582(c) if the Guidelines form the basis of the sentencing range or of the specific term in the proposed agreement.  See Hughes, 584 U.S. at 692 (Sotomayor, J., concurring)(citing Freeman, 564 U.S. at 534-44 (Sotomayor, J., concurring)).  Some years later,

Justice Sotomayor joins the <u>Hughes</u> majority in full, which adopts the <u>Freeman</u> plurality view.  <u>See</u>

<u>Hughes</u>, 584 U.S. at 691.

Pursuant to <u>Hughes</u>, Thyberg's sentence is based on the Guidelines, as <u>C.D.</u>'s first prong

requires.  <u>Hughes</u> states that "[a] sentence imposed pursuant to a Type-C agreement is no exception

to the general rule that a defendant's Guideline range is both the starting point and a basis for his

ultimate sentence."  <u>Hughes</u>, 584 U.S. at 686-87.   This rationale applies here.  The sentencing

hearing record reflects that the Guideline range was part of the analytical framework that Senior

Judge Parker used to accept the plea agreement and to sentence Thyberg.   At the sentencing

hearing, Senior Judge Parker notes that Thyberg's sentencing range is 110 months to 137 months

and states that he "considered the Sentencing Guidelines" before sentencing Thyberg.  Parker Tr.

at 3:11 (Parker); <u>id.</u> at 4:15-17 (Parker).   These statements at the hearing demonstrate that

Thyberg's sentence was based, pursuant to <u>Hughes</u>, on the Guidelines.  "<u>Hughes</u> was explicit that

eligibility for relief does <u>not</u> 'turn on the form of [a defendant's] plea agreement'"; <u>Hughes</u> also

holds, "that the later-amended Guidelines provision need only be '<u>a</u>' relevant part of the sentencing

calculus." <u>United States v. Smith</u>, 896 F.3d 466, 472 (D.C. Cir. 2018)(Millett, J.)(quoting <u>Hughes</u>,

584 U.S. at 687)(emphasis in <u>United States v. Smith</u>)(brackets in <u>United States v. Smith</u>, but not

in <u>Hughes</u>).  In light of Senior Judge Parker's statements at the hearing that he considered the

Guidelines, and <u>Hughes</u>' liberal standard in construing the relationship between a Type C plea

agreement and the Guidelines, the Court concludes that the Guidelines played a  role in Senior

Judge Parker's decision to accept the Plea Agreement.

Turning to the other part of <u>C.D.</u>'s first prong -- whether the Sentencing Commission

subsequently lowered Thyberg's sentencing range -- the Court concludes that Amendment 821's

retroactive application results in a lower Guideline imprisonment range than Thyberg had at the

time of his sentencing.  See C.D., 848 F.3d at 1289.  Amendment 821 applies retroactively.  See

U.S.S.G. § 1B1.10(a)(1), (d); United States v. Claybron, 88 F.4th 1226, 1228 (7th Cir. 2023).

Amendment 821 changes the way criminal history status points are calculated for the purposes of

establishing the defendant's criminal history category.  Section 4A1.1(e) adds "status" points to a

defendant's criminal history score if the defendant "committed the instant offense while under any

criminal justice sentence, including probation, parole, supervised release, imprisonment, work

release[ ] or escape status."  U.S.S.G. § 4A1.1(e).  Under Amendment 821's Part A, defendants

with 7 or more criminal history status points now receive 1 status point rather than 2 status points,

and defendants with less than 7 criminal history status points receive no status points if they

committed their offense while under a criminal justice sentence.  See Supp. to App. C at 235;

United States v. Fabian-Hurtado, No. CR 21-644, 2024 WL 706934, at *2 (D.N.M. February 21,

2024)(Johnson, C.J.).

The PSR calculates Thyberg's criminal history score as 13; 2 of the 13 points come from

§ 4A1.1(d), as Thyberg committed this crime while under a criminal justice sentence.  See PSR ¶

43, at 14.  Pursuant to Amendment 821's Part A, the parties agree that Thyberg now receives only

one status point, which brings his criminal history score to 12, and results in a new criminal history

of V.  See Motion at 2.  Thyberg's new criminal history category of V results in a new Guidelines

range of 100 months to 125 months.  See Motion at 2.  Because this Guideline range is lower than

Thyberg' original Guideline range of 110 months to 137 months, see PSR ¶ 81, at 22, and Thyberg'

sentence was based on this higher Guideline range, as discussed above, Thyberg satisfies C.D.'s

first prong.

## II.     A REDUCTION IN THYBERG'S SENTENCE IS NOT CONSISTENT WITH SENTENCING COMMISSION POLICY STATEMENTS.

While not the driving factor in the Court's decision to deny Thyberg a sentence reduction, the Court holds that a reduction in Thyberg' sentence is not consistent with U.S.S.G. § 1B1.10 because of his disciplinary infractions while incarcerated.  U.S.S.G. § 1B1.10 is the pertinent policy statement addressing reductions in terms of imprisonment as a result of an amended Guidelines range.  See C.D., 848 F.3d at 1289; U.S.S.G. § 1B1.10(a)(1) ("As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.").    First, § 1B1.10(d) lists Amendment 821 as a covered retroactive amendment; thus, because Thyberg seeks a reduction pursuant to this Amendment, his request, so far, is consistent with the § 1B1.10 policy statement.  See U.S.S.G. § 1B1.10(a)(2)(A)(retroactivity requirement); id. § (a)(2)(B)(Guideline-range-lowering requirement).    Second, Thyberg's requested 100-month sentence, see Motion at 2, does not reduce his term of imprisonment "to a term that is less than the minimum of the amended guideline range," which in this case, is 100 months.  U.S.S.G. § 1B1.10(b)(2)(c).  Third, the Court observes that, because Thyberg has been in continuous custody since June 28, 2016, see Memorandum at 2, reducing his term to 100 months, would, at this point, violate § 1B1.10(b)(2)(c)'s prohibition on reducing the term of imprisonment to less than time served, see U.S.S.G. § 1B1.10(b)(2)(c).  Nonetheless, because the Court has discretion to determine whether to reduce a term of imprisonment, the Court concludes that the prohibition in § 1B1.10(b)(2)(c) does not bar Thyberg's request, so long as the Court imposes a reduced sentence that is not below time served.  See U.S.S.G. § 1B1.10 cmt. 3 ("In no case, however, shall the term of imprisonment be reduced below time served.  See subsection (b)(2)(C).  Subject to these limitations, the sentencing court has the discretion to determine whether, and to what extent, to reduce a term of imprisonment under this section.").

Thyberg runs into problems, however, because Application Note 1(B) to U.S.S.G. § 1B1.10 states that the Court "may consider" the defendant's post-sentencing conduct. U.S.S.G. § 1B1.10 cmt 1(B). See United States v. Osborn, 679 F.3d 1193, 1196 (10th Cir. 2012). Specifically, the Tenth Circuit states that "the presence of prison disciplinary reports" on a defendant's record "is a proper basis for denying a motion under § 3582(c)(2)." United States v. Osborn, 679 F.3d at 1196. Here, Thyberg's disciplinary record while incarcerated includes two infractions, in particular, that weigh against reducing his sentence: (i) attempted assault of another inmate; and (ii) possessing a hazardous tool. See Response at 10. The Court is cognizant that prison is a violent place and that Thyberg's infractions are not egregious. Additionally, Thyberg also has participated in a great many educational and rehabilitative programs while incarcerated. See Tr. at 8:15-20 (Saing). This participation mitigates his smattering of disciplinary problems. Hence, while Thyberg's post-conviction conduct is not perfect, and indicates that he has participated in violence in prison, the Court does not deny his Motion based solely on his post-conviction disciplinary history.

## III.    THE § 3553(a) FACTORS DO NOT WEIGH IN FAVOR OF A SENTENCING REDUCTION.

The more important reason why the Court denies Thyberg's motion has to do with how his particular 11(c)(1)(C) Plea Agreement interacts with the § 3553(a) factors. "A defendant's eligibility for sentencing reduction does not give him an absolute right to reduction." United States v. Collazo, 2020 WL 601943, at *3. Rather, courts must ensure that a reduced sentence remains consistent with the § 3553(a) factors, which call upon district courts to evaluate, as pertinent here, "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the "need for the sentence . . . to reflect the seriousness of the offense, to promote respect

for the law, and to provide just punishment for the offense," and "to afford adequate deterrence." 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(B).

Hughes indicates that a district court need not ignore an eligible defendant's rule 11(c)(1)(C) agreement. "The district court can consider the benefits the defendant gained by entering a Type-C agreement when it decides whether a reduction is appropriate . . . ." Hughes, 584 U.S. at 689. Thyberg's plea agreement benefitted him in two significant ways. First, it lowered his sentencing exposure in this case. Thyberg's Guidelines range, if he had been convicted at trial, would have been 140 months to 175 months. See PSR ¶ 82, at 22. His agreed-upon sentence of 120 months is much lower than the minimum sentence available under his hypothetical post-trial Guidelines range. Pleading guilty saves Thyberg at least 20 months of prison time and perhaps more: while the Court knows that it would have sentenced Thyberg to the bottom of the Guidelines range, it is possible that Senior Judge Parker would have sentenced Thyberg to the middle of the Guidelines range, or higher.

Second, the plea agreement allows Thyberg to wrap up his older federal case and serve his sentence for his violation of supervised release concurrently to this case's sentence. As Senior Judge Parker notes at Thyberg's sentencing, Thyberg's Guidelines range for his violation of supervised release in CR 09-0538 is 30 months to 37 months. See Parker Tr. at 7:18-20 (Parker). This range is a fairly high range for a supervised-release violation. The range is high because Thyberg's violations include unlawful possession of a controlled substance and possession of a firearm and ammunition, both of which are Grade A violations, pursuant to U.S.S.G. § 7B1.1, with a criminal history category of V. See Amended Petition for Revocation of Supervised Release at 2, CR-09-0538, filed August 16, 2016 (Doc. 75). It is not the Court's practice to run supervised-release sentences fully consecutively to a newer federal case's sentence; other judges may be more

aggressive sentencers, however, when there is a new crime and a violation of supervised release. Thyberg likely was concerned that Senior Judge Parker, without the Type C agreement, would have run a considerable amount of Thyberg's supervised-release sentence consecutively to his sentence in this case. The Plea Agreement eliminates this possibility and gives Thyberg the ability to resolve two cases at once.

The dual benefits Thyberg gains from the Plea Agreement make overriding the Plea Agreement unwarranted here, especially given that Senior Judge Parker, and not the Court, sentenced Thyberg. This change in judge makes it more difficult for the Court to recreate mentally Senior Judge Parker's thought process. When the Court sentences a defendant who later brings an Amendment 821 motion, the Court can determine how it would have dealt with a lower Guidelines range at the time of sentencing and can resentence the defendant accordingly, or decline to resentence at all. Here, the Court is left speculating what Senior Judge Parker might have done if Thyberg's Guidelines range had been lower. What is certain, however, is that the Plea Agreement benefits Thyberg. Thyberg is to be commended for earning enough good time to merit a transfer out of prison and to the halfway house, where, by all accounts, he is doing well. Thyberg's bargain is working for him. Given the difficulties inherent in reconstructing the circumstances of Thyberg's sentencing in Las Cruces, the Court declines to award Thyberg a better bargain than the one he struck already with the United States and Senior Judge Parker.

**IT IS ORDERED** that the Defendant's Opposed Motion for Sentence Reduction Under Guideline Amendment 821, filed April 3, 2024 (Doc. 28), is denied.

_____
UNITED STATES DISTRICT JUDGE

- 25 -

*Counsel:*

Alexander M.M. Uballez
  United States Attorney
Devon Marie Aragon Martinez
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

      *Attorneys for the Plaintiff*

Gregory Garvey
Garvey Law Firm
Mesilla Park, New Mexico

--and--

Natalie Saing
Theodosia Johnson
Kurt J. Mayer
  Assistant Federal Public Defenders
Albuquerque, New Mexico

      *Attorneys for the Defendant*